On Rehearing.
MONROE, X
The application for rehearing is based upon the grounds: (1) “That the judgment herein rendered by this court is contrary to both the law and the evidence;” (2) “that the facts on which the said judgment is based are erroneously found by the court.” In the original brief filed in support of this application, the counsel for plaintiffs say:
“We do not care, indeed it is not necessary, to discuss the case in all its particulars, as we have once attempted to do, but will confine our attention on this application to the points which we think were erroneously found by the court, and unjustified by the facts upon which the opinion is based. In the first place, the court, practically determines that the boy did not stop, look, or listen before he entered upon the avenue. * * * The learned judge who rendered the opinion says: ‘Returning to the situation as it existed when he entered the avenue, the boy states in his testimony that he stopped before reaching the west track and looked both ways; that he saw a car on that track, about the wagon yard, going south, and that it did not stop; and there was no other car in sight. When called upon by the counsel for the plaintiffs to be specific as to whether he shaped his horse, or merely checked his speed, he said that “he slacked him up.” Aside from this, it is proved by other witnesses, and controverted by none, that the horse either galloped, trotted, or cantered into the avenue, and that his speed, if reduced at all, was not reduced below a trot until he was struck by the car. It is established beyond question that the south-bound car stopped near the wagon yard because the electricity failed, from which it follows that, as it had not been stopped when the boy last saw it, he musí: have been mistaken as to its position at that time.’ ”
After making this excerpt from the opinion, the learned counsel, in the brief to which we are now referring, proceed ■ with their comment, as follows:
“We are willing to concede that perhaps the boy may have been mistaken as to where the out-town car was, exactly, at the time he looked. His language is, ‘about Moeh’s wagon yard gate’; that means, it could have been in front of the stable, or anywhere between the front of the stable and the wagon yard gate, or even beyond the gate; but, as to the question, whether he stopped and looked and listened, it does seem to us that” (it) “cannot be questioned under the plain state *511 ment of the testimony and evidence in the record. Has he got to stop? Or is he to slack up? The law don’t require either; it requires him to look for a car before entering the avenue. How, then, if he slacked up, as some of the witnesses put it, or as the hoy himself says, or, as William Harris puts it, ‘he checked up before entering the avenue,’ or, as witness Peterson puts it, T saw the boy come galloping his horse until he got to the avenue, then he stopped and dropped to a trot and started across the tracks.’ ”
At another place in their brief, the counsel say: “The question that we most seriously contend is erroneously found by the court * * * is the following statement from the opinion * * *: ‘Where a person emerges rapidly from a side street and crosses immediately behind a passing ear, there is nothing to suggest his approach to the motorman on the farther track, and the bru’den of responsibility for the collision rests for the most part upon the individual himself. That is true in the present instance.’ We see from this quotation and other like quotations that might be taken from the opinion that the learned judge who rendered the opinion based it exclusively on the fact that the boy passed immediately behind the outgoing car and collided with the downtown car. This fact, we think, is erroneously found; we don’t think that the evidence justifies such a conclusion; in fact, that contention was practically abandoned by defendants in the lower court and not seriously pressed by them in this court,” etc.
The syllabus of the supplemental brief, filed nearly seven months later, and prepared, as we understand, by other counsel, called into the case by reason of the lamented death of the author of the brief from which the foregoing excerpts have been taken, reads as follows:
“1. When one approaches an avenue, on which there is a double electric car line, from an abutting street, at a street crossing or a place equivalent thereto, and listens and sees an outgoing car on an adjacent track which then masked from his view a down-coming car on the opposite track, it is not negligence, as a matter of law, for him to proceed to cross the track without again looking and listening. The question is one of fact, for the jury, whether a prudent man, acting prudently, would have thought it unnecessary to do so.
“2. The rule is clear that, when both parties are negligent, the party who has the last clear opportunity to avoid the accident, notwithstanding the negligence of the other party, is considered solely responsible for it.”
From the context of this brief we make the following excerpts, to wit:
“There is no dispute that Harry Schutt, on approaching Texas avenue from Christian street, looked up and down the tracks of defendants’ electric road, and that he saw the outgoing, south-bound car, and that the northbound, incoming, car was then masked from his view by the outgoing car, and that he then proceeded to pass across the street. That was all that caution and prudence legally imposed upon him for his own protection.”
Hi * * * * *
“However, the court seemed to hold, in the original opinion, that the boy rode immediately behind the outgoing car without stopping or listening, and attempted to cross the east side track a few feet in front of the down-coming car, and that the motorman was not negligent in failing to see the hoy, nor in divining his purpose, nor in attempting to stop the car.”
“We submit that it was sufficient for the boy, at this place, to have looked and listened when he first approached Texas avenue from Christian street, and that it was not necessary for him to look and listen again when approaching the car tracks, in crossing the avenue. Especially is that the case at this place, which is a public street crossing, or equivalent to it, in its situation and environment.”
H; * Ht * sp Hf
“We submit, further, that, as a matter of fact, the boy did not cross the track immediatelj'’ behind the outgoing car. * * * The defendants’ counsel never seemed to consider that they had any such defense, or that the evidence furnished sufficient foundation for any such defense. The theory of the defense was that the boy could have seen the down-coming car by looking and listening, and, not having done so, that he was guilty of contributory negligence, and thereby barred from .the right of recovery.”
It is thus, as we take it, conceded that the *513 boy did not stop upon reaching Texas avenue, but continued to ride, at least at a trot, until, after crossing the west track, he was struck by the car moving northward on the east track. It is also conceded, in terms, that, as he approached Texas avenue through Christian street, the car by which the injury was inflicted “was then masked from his view by the outgoing car,” i. e., the car moving southward on the west track. As to whether the masking referred to occurred when he “approached,” or after he had reached, the avenue, however, the boy - himself, interrogated as a witness by counsel for plaintiffs, says:
“Q. As you approached the avenue, did you see that car going up? A. I saw that car when it was about Moch’s wagon yard gate.”
On the cross-examination, we find the following questions and answers:
“Q. Now then, when you got there, to the corner, you got there in clear open view of the avenue, the way the other car was going? A. Yes, sir. Q. And you looked at that time, and did not see any car coming down on the track opposite? A. No, sir. Q. Did not see any car at all? A. No, sir. Q. You went across and got on the other track? A. Yes, sir.”
Being asked why he did not at that time see the car coming on the east track, he answers, “Because I couldn’t see it through the other ear.” Moch’s wagon gate is on the west side of Texas avenue, 129- feet south of the center of Christian street, from which it follows that the boy, approaching the avenue through Christian street from the west, could not have seen the car at that point, i. e., in front of the gate; nor does he at any time assert that he saw it before he reached the corner. But, as has been shown in the original opiimon, in that position the car which inflicted the injury, in order to have been masked from his view by the other, must have been four or five hundred feet away, and as the boy continued to ride on, at least at a trot, he would have crossed the east track before it reached him. Under these circumstances, and as there was absolutely nothing to have prevented his seeing the oncoming, north-bound car if he had looked, unless it were the outgoing south-bound car, we must conclude either that he did not look, or else that he is mistaken as to the position of the south-bound ear, and that he crossed the west track immediately after it had passed him on Christian street. And we have adopted the latter conclusion because it is supported by probability, by the direct testimony of several witnesses, and by the statement, made to Dr. Tarkington, of the boy himself. In the brief last filed the plaintiffs’ counsel say:
“The full and clear statement made by the boy on the trial is not inconsistent with Dr. Tarkington’s statements, if fairly oonstmoed.” (Italics by the counsel.) “If the boy was not under the influence of opiates at the time of the statement to Dr. Tarkington, when the surgeons were preparing for the operation, then the doctors were far short of their duty.”
Dr. Tarkington, it may be remarked, was called as a witness for the plaintiffs, and not only gave testimony as to specific facts within his knowledge, but also gave expert testimony in their behalf. In the course of his cross-examination he was asked how the boy had said the accident occurred, and, when the court had sustained the objection that such a question was not cross-examination, the counsel for defendants made him a witness for the defense, and he gave the testimony quoted in the original opinion. There is not a syllable in the record tending to show that the boy was under the influence of opiates when Dr. Tarkington interrogated him, nor is there a syllable to indicate either that Dr. Tarkington whom the plaintiffs vouched for by placing him on the stand as an expert in his profession would have interrogated him whilst in that condition, or that he or the other surgeons in attendance fell short of their duty in the matter of administering opiates or otherwise.
As to the construction which the court has placed on it, the testimony of Dr. Tarkington speaks for itself, but it is hardly logical to say that it has not been fairly construed, and at the same time to make an attack upon the witness who gave it, predicated upon the assumption that it has been fairly construed.
It is true that the boy was suffering a great deal of physical pain when he was questioned, but we do not deduce from that circumstance that he was unable to tell the truth, or that he was not at least as likely to answer truthfully as falsely. And we conclude that he answered truthfully because his answers are corroborated by the testimony of *515 other witnesses, and afford a more probable and satisfactory explanation of the accident than any other theory propounded.
The suggestion, which is now made in the brief of the counsel, that the boy might have “looked from a point farther back on Christian street,” cannot be adopted, because it does not conform to the facts as established by the evidence, nor would it avail if adopted, since, if the south-bound car was then (i. e., when he looked) in front of the wagon yard gate, he could not have seen’it from a point farther back, and, upon the other hand, if it was then passing the corner that he was approaching, and nevertheless masked the north-bound car, the latter would have gone beyond the point at which, the accident occurred before the boy reached it.
The counsel are correct in saying that the court was in error in supposing that the witness Ryan occupied a position on the northbound ear from which he could onty have seen the boy entering Texas avenue through the windows of that car. It seems that he was on the left, or south, side of the rear platform, and, unless the boy was masked by the south-bound car, the witness might have seen him without looking through the windows of the car upon which he was riding. But if the statement of the boy that the north-bound car was masked from him be true, it would seem to follow that he was masked from the passengers on that car, and, if a passenger standing on the rear platform could have seen him, there was nothing to have prevented his seeing the car on which such passenger was riding. Considering these conditions, in connection with the fact that, whilst Ryan stated that he saw the boy riding into Texas avenue, he was unable to say, though pressed upon the subject, whether his horse was galloping, trotting, or walking, it is evident that he was not an observant witness, and his testimony contributes nothing to the result. To the suggestion that the court has adopted a view of the case which had been abandoned, or was not pressed by the counsel for the defense, we can only say that we have not been informed of the abandonment referred to; that the case is one the decision of which depends mainly upon the facts; and that, being responsible for such decision, though gratefully acknowledging the offers of assistance received, we have thought it advisable to take those facts from the record, without being entirely controlled by the views of the counsel on either side concerning them.
A review of the matter has not convinced us that there was error in the conclusion thus reached.
It is therefore ordered that the judgment heretofore rendered be now reinstated and made the final judgment of this court.
BLANOHARD, J., takes no part.